I see you also were appointed under the Criminal Justice Act and the court appreciates you. Oh, I greatly appreciate it as well. Thank you. May it please the court. My name is Jason Hine. I represent the appellant in this case, Mr. Bryan Kimble. Mr. Kimble was found guilty at trial of distribution of a controlled substance, three counts of that and one count of conspiracy to distribute. The relief we are seeking is a reversal and a remand for new trial that's based on evidentiary errors that we believe are not deemed harmless error. The first issue I want to get into is Government's Exhibit 4. That was a Missouri Department of Revenue record. So the record itself showed the photo of Mr. Kimble. It showed his name and it showed his address. The address shown on that was 5375 Wells Avenue in St. Louis, Missouri. Testimony was elicited to introduce that exhibit through Special Agent Sean Becker. Mr. Special Agent Becker testified that this whole investigation started with a cooperating informant. Cooperating informant says, I know Mr. Kimble to be distributing controlled substances around the St. Louis area. Special Agent Becker meets with the cooperating informant. He then goes to his house, to alleged house, which is the 5375 Wells. Can I ask you a question? In your brief, you take the position, well, let me lay a little foundation here. It's clear that it wouldn't have been a hearsay problem if the officer had simply been asked, did you check the database, find an address, what was that address, did you go to that home? You agree that wouldn't have had the evidentiary problem, right? I would 100% agree, Your Honor. You take the position that that doesn't matter in the harmlessness analysis, that we're not allowed to consider what would have come in without raising hearsay problems because it didn't. And I'm having an incredibly hard time understanding how you can say that. It is hard to say that this is harmful, this particular, your topic one, if all of the relevant contents could have just been introduced through testimony, which is certainly what they would have done if the objection had been sustained. If I stated that, I greatly apologize. Okay, I might have misperceived. What I was going at was, I completely agree that they could have done that. I have no dispute about that. The harmless distinction and where we get into that it's not harmless there, I think there is a big difference between an officer saying, look, I searched through our databases, I polled, and I determined that this 5375 Wells Avenue address was the address for Mr. Kimball. As opposed to actually admitting a record that is a government record, so the state of Missouri issued record, putting it into evidence, showing the jury for them to be able to decide for themselves. And here's the reason why I make that distinction as it's completely different. Special Agent Becker's credibility was the main argument at the trial. Mr. Kimball was never arrested after any of the controlled substance alleged transactions. So there's three transactions that all occur. Every transaction is done with undercover audio and video, so you can see Special Agent Becker in his vehicle. You can see him pull up alongside another vehicle. And you can see, in most scenarios except for one, a female, hand something to Special Agent Becker, and Special Agent Becker take it. Never do you see Mr. Kimball on any of the video participating in any of the controlled substance offenses. It feels, though, like if his credibility was central to the case, and I'll totally credit that that was the theory, it seems impossible that the breakdown would be that the jury would find that he didn't find this address in the database. I mean, it's just such a factual thing. It's also corroborated, isn't it, by the informants saying, let's go to the house and knowing where the house was? Well, that, in the record, it's not as clear that the informant says, okay, he lives at this address, please now travel to this address. That's kind of muddled, but I see your point. But the proof is kind of in the pudding of the rearview mirror to merge all of my colloquial metaphors. But I mean, the jury isn't going to say, I think he lied about the entire existence of the address. Even if they agree with you that there's something shady about how the agent went through the investigation. I see where you're coming from. And the only difference I would point out to you is I think when we're dealing with testimony and where it comes in and with the jury following everything and saying I got it from this, that all can happen and they can hear all of that. But when they're actually an exhibit is admitted and shown to them and then ask questions about that and then later ask questions in the trial of, now you traveled to 5375 Wells Avenue, yes. Where have we seen that address before? And then he specifically, Special Agent Becker specifically states, that's the address that's on the Department of Revenue record. And then we. But he could have said that either way, right? He could have said, I got the Department of Revenue address, never put it into evidence, and they could have referred to it a thousand times and we wouldn't have this issue, right? He could reference the address, yes. But. And where he got it. And where he got it from. Okay. Correct. But I think that. So you're saying that adding the record to the evidentiary base was no good. But your only argument for that is lack of foundation. And that objection wasn't made, would have been easily cured. And so it seems to me we're now, you've had to retreat to plain error country. Well, I would disagree, Your Honor. So from the first one, for the actual DOR record, the objection was made as to specifically what was stated on the record. It's a lack of foundation. It's best evidence. And that the proper way to do it would be through a custodial affidavit from what's called, I use the term regis because that's what we use, but from the Missouri Department of Revenue. So as to that, this is not where the judge had previously stated. No, but if the court had read the objection broadly and sustained it, Judge Menendez's point just holds up. It's easily cured. In terms. With the testimony of, modified testimony by Officer Becker and a custodian. Or a stipulation that the record is what it purports to be. I would agree that it would be cured by him testifying to what the address was. I don't believe they would have. Oh, a custodian, an MDR custodian. Yes, I agree, Your Honor, if they would have had that. I suspect the trial court would have talked the defense out of insisting on that. I agree, Your Honor. I just, once again, as to the specifics, and I will draw this distinction once again. I do think there is a difference between the officer testifying that I found this address, I found it through this, and then actually seeing the record itself. The record itself speaks for itself in our mind. It is unbiased. It's independent. It's related to a government agency. Therefore, from the defense standpoint, attacking the record, it's something that you almost can't attack. Whereas, attacking Special Agent Becker and his ability to remember things, his ability to remember the address he got it from, attacking him onto whether he had checked the date that was on that, whether, when it was last updated. Those are all things that could have been attacked just solely on his testimony. But the record itself, as to what it was and what it shows, there was no way to actually attack that. So that's our first issue we wanted to address. The next issue that we wanted to address was the actual text messages. That's the main thing I wanted to get into. That's subparts of Government Exhibit 5. The text messages prior to their introduction, the only testimony that was elicited was that the exhibit contained text messages. I do want to make it clear, it was not shown to Special Agent Becker, and Special Agent Becker said, this is text messages between myself and Mr. Kimmel. That testimony never happened. It could be inferred, possibly, that that's what it was, because of the broad-term communications between myself and Mr. Kimmel are in Exhibit 5, but not specifically text messages. So now we get into what Your Honor had spoken to earlier of, is this plain air, is this not plain air? And that was the argument of, prior to their admission, we had a sidebar. It was brought to the District Court Judge's attention, and a three-part objection was made. It was hearsay, it was an authenticity argument, and it was a foundational argument. It had been brought up earlier at a motion in limine. Judge Clark had stated, I'm going to overrule it, and he also specifically instructed myself, since I was trial counsel, if there is a foundational argument, you need to bring that up to my attention and not state, as previously stated. Otherwise, you can just stand up and state, as previously stated. The interpretation of that led me to believe, as the foundation alone, that would need to be re-brought up. However, as to hearsay and authenticity, that would not need to be re-raised. So if we look at, it's a two-part issue here. There's an authenticity argument as to, prior to their admission, the text messages, are they what they're purported to be, under the federal rules of evidence? And- I'm having a hard time understanding the daylight you see between authenticity objection and foundation objection here. And I see with that, and I think it was just more or less, I read Judge Clark's, since he did not address authenticity at all and only addressed foundation, I read the foundation to me, and foundation as to whether the witness has testified as to anything connecting it whatsoever, if that makes at all sense. So, the authenticity that we have is whether the texts are what they're proposed to be. And then the next part is the hearsay. Which is, was there sufficient evidence to fall under the co-conspirator exception? And that's where I think both sides, myself and the government, address United States versus De La Torre, which this circuit did an analysis of as to whether or not non-hearsay statements can be deemed as a co-conspirator in text messages. And looking at that case, the court talks about four separate things. The most important one is that the court looks at the text messages before their admission, discussed transactions between the person who was trying to admit them and the defendant. And they established that before they were actually admitted. In this case, there was no evidence of that prior to their admission. Special Agent Becker never stated that on Government's Exhibit 5, you're going to see text messages between myself and Mr. Kimball, you're going to see that we're discussing drug transactions, we're discussing prices, and we're discussing specific drugs. Without that, it becomes error. Now we get to the harmless- Well, it becomes error. I don't see the error. The error is into how- Just because the judge didn't see it until the testimony came at trial? No, after the admission, there was nothing before the admission of the text messages. Yes, but when it becomes, you know, if it's admitted without that, and then the gap is filled, what's the error? Well, and the error, I guess, is just evidentiary-wise, it was never done. And then the way it was done after the fact- Sounds like an academic issue, more than a practical issue. I see your point, Your Honor. But if you were- How wasn't this enough? I mean, I'm having a hard time trying to figure out what more you think had to be said, other than a pretty hyper-technical reading. There is the question about, have you seen these items? They're videos, as well as communications between myself and Mr. Campbell. Have you reviewed them? I have. What, are they in the same condition? They are. They're video and text messages, correct? Correct. There's also phone calls? Yes. Substantially the same condition? What's missing? I would argue what's missing is to make him a co-conspirator. Nothing is established yet that the communications are discussing drugs, if that makes sense. Okay. And I would just ask to reserve my remaining time for rebuttal. Okay. Thank you. Thank you. Ms. Walker? Good morning. And may it please the court, my name is Ashley Walker. I am the Assistant U.S. Attorney representing the government in this case. To kind of just start where the court left off with asking what was missing from the text messages and the admissions of them, the reality is nothing was missing. Agent Becker was able to lay the foundation. He was able to say what the communications were.  And he even after that point, there was an actual identification about which parts of Exhibit 5 were going to be admitted. And that included the text messages. That was one of the specific identifications. And so at that point in time, it's clear that he is discussing that these are communications, text messages between the defendant and himself, Agent Becker. What was the subsequent corroboration? I didn't follow that. Yeah. As far as the subsequent corroboration, what I'm saying is that at the time that they were actually admitted as Exhibit 5, it was admitted as Exhibit 5A, B, C, and so forth. And those are all listed on the exhibit list that the defendant had access to. And they specifically noted that they were text messages. So the defendant was aware that those were text message communications. So it's, in my opinion, a bit disingenuous to say that it wasn't clear what these communications were. In addition to that, after the messages were admitted into evidence, there was subsequent testimony by Agent Becker further explaining not only what the text messages were, but why he was able to identify the person that he was communicating with. That was in essence cured. He specifically indicated that he knew it was the defendant he was talking to because those text messages related to the actual transactions. There was only information in those messages and in the phone calls that related to situations that only a person that was present would have been there for. So that's further curing any potential issue. Furthermore, there was testimony as to what the specific phone number was that was used. That was also testified to by Agent Becker. And there was testimony that that specific phone number was used to communicate with the defendant and was given to them by the cooperating defendant. What's your best authority for the idea that post-admission details, in the realm of kind of foundational type objections, post-admission details can cure pre-admission, you know, a judge's mistaken decision that sufficient foundation had been laid? It's the worst question I've ever asked, but do you know what I'm getting at? I do understand, Your Honor, and while I wasn't able to find Eighth Circuit cases, I did find a Ninth Circuit case, which was United States v. Beckley, 9F3D1554, which actually indicates that the effect of later testimony would have cured any foundational defect that might have occurred. Can we pivot for a moment, if you don't mind, to the first argument? I feel like you have a somewhat overly generous interpretation of waiver, and I want to get at whether we really are in harmless error land on that first, or whether we're in plain error land. And I'm looking at this objection that you say isn't enough to preserve the issue. And just to make sure I'm being more clear than my last question, we're talking about the Department of Revenue record. Objectives to the foundation, as to it's a Department of Revenue record that is then ran through another system, which would be Regis, so the best evidence, so he says foundation, so the best evidence would be the Department of Revenue record itself, and then he goes back to, I think that would be the proper way to lay the foundation for the revert or, I'm sorry, then he says revenue record from the Department of Revenue itself with a business affidavit, so we're back to foundation. I think that would be the actual proper way to lay the foundation of the record itself. You read this as not a foundational objection? No, Your Honor. I read it as the defendant is actually arguing, it's not clear what the defendant is arguing, because as we understand that a foundation argument at its basic core is how you are able to admit the evidence, why you're admitting the evidence, what the evidence is, and those types of questions. And he says foundation twice and business affidavit, and you think that doesn't preserve a foundation objection for review? I think it preserves a foundation objection, what I don't think is it preserves a hearsay objection, which would be why he would need a business record affidavit in the first place. It seems like in his subsequent briefs that he is arguing that the business record exception for hearsay is what should have been used, but he did not object to hearsay at any point in time during the trial as it relates to the Missouri Department of Revenue record. And if that was his objection to hearsay, then at that point in time we would have been able to clearly make sure he understood we are not admitting this for the purpose of the truth of the matter asserted, we are admitting this to just demonstrate police investigations. And so that is why you can now say it was not for the truth of the matter asserted, but it's true that you never told the judge this wasn't for the truth of the matter asserted, correct? We never used those specific words, but if you look at the trial transcript and how it came in, Agent Becker was first testifying to what he used during his investigation. Right, but it was also, I mean this is one of those things that kind of swallows the rule. You used it to prove that this was the gentleman's home. There were no limiting instructions, you used it in later argument to tie him to the home. It might also have served the purpose of telling the story of the investigation, but the government wanted to tie him to that home, is that right? I think that it was showing that the government wanted to make sure it was clear that the officer was doing the homework of trying to figure out how to identify who this defendant was. Because the reality is that the defendant himself proved that it was his home simply by him showing up. But, I mean, I get that, show the homework. That's not an element of the crime. You don't have to show he did a thorough investigation. I mean, you really wanted this to tie him to the home. It might also be to show what a thorough officer you have, but you're not just asking for narrative about all the great things he did to get to this point. You all made it a point of evidence that you could tie him to the home. You have the record, you have the corroboration of him showing up at the home, you have the informant. You needed to tie him to this home. So it feels hard to understand how that's not for the truth. So my response to that, Your Honor, would be that we did not need to necessarily tie him to that home. Because that does not go to any of the elements of any of the crimes. When you referred to the document later in the case, like an argument or cross, was it to show the thoroughness of the investigation? I would argue that yes, it was. Tell me a little bit about that. So I'd have to go back in the record to figure out exactly where you're talking about. Because my other indication of it being discussed was in closing argument by the government. And during that closing argument, it appears that it was clearly discussed to show these were the steps made. Again, first we discussed the booking photo. That he did the research to figure out what this guy looked like. He then did the research to figure out if he was corroborated then from the co-defendant. This was all just background type of investigation. But even understanding that, and if the court is inclined to believe that it was used for the truth of the matter asserted, it doesn't matter because it was harmless. In this situation, not only was the record corroborated, were the address corroborated by other evidence, including testimony from Agent Becker stating... Let me just ask you, as an old civil litigator, I'm always uncomfortable with hearsay. Is it hearsay law that if it's admitted because not to prove the truth, that therefore the fact that it does help prove the truth somehow creates error? No, Your Honor, I don't believe it does. Now that could have been cured with a limiting instruction, which is something that is sometimes done, but it was not requested in this case. Going back to the idea of it being harmless error, it was a situation where this address had been discussed on different occasions. Agent Becker testified that the defendant received tickets, and on those tickets he gave this same address. At that point in time, there was no objection at all from the defense counsel. Then additionally, again, if this record had not been admitted, this case was still proven beyond a reasonable doubt by the identification of the defendant through other means. By one, first him showing up and saying to the cooperator and Agent Becker to go to my house, and then showing up at the house, rolling down his window, Agent Becker is able to identify him at that point, being able to see him. He shows up at each transaction that was actually charged. Agent Becker is able to visibly see him for two of those transactions. They have subsequent conversations about those transactions. There are subsequent phone calls and text messages regarding those transactions. They're even laughing with each other regarding one of the transactions about how it transpired. There's clear evidence here of identifying him not only for the purpose of the DOR record, aside from the DOR record, but for the purposes of the admissions of the text messages and the audio. Do you agree with opposing counsel's characterization that the credibility of Special Agent Becker was kind of the key narrative for the defense? Of course. I think that that was a big part of their argument, is that Agent Becker wasn't able to identify the defendant. I think that's all that they really had at that point. Again, that's a question for the jury. The jury made the decision that they did believe Agent Becker. It's just not reasonable to believe that that was made solely on a DOR record. It was made based on all the testimony from Agent Becker. In addition to it, there was testimony from other agents and chemists. There was a myriad of evidence that was presented at this case. At the end, the jury made the correct decision that the defendant was guilty. Thank you. Because of all that, we're asking that you affirm the decision. Unless there are any questions, I will conclude my time. Very good. Thank you. Thank you. Mr. Hyde. Thank you, Your Honor. May it please the Court, I would just like to add the Beckley Ninth Circuit case that was addressed. That, I believe, is distinguishable. That was the opinion of an expert witness. It was not the admission of an actual exhibit. So I think for that reason, the opinion as to an expert as opposed to admitting an actual exhibit is a little different. In regards to why a limiting instruction was not requested, it was always the defense's understanding that this wasn't being used for non-hearsay purposes because the district court was never put on notice of that. They didn't stay during the objection or anything along those lines that this is non-hearsay. And the fact that it was referenced back to led the defense to believe that this was being used for truth of the matter asserted. Finally, I would just end with the actual exhibit itself, the reason we believe it is not harmless error, it confirms Special Agent Becker's testimony. It shows of what he is saying. And my time is out, and I thank you all. Thank you. Thank you, counsel. Case has been well briefed, very well argued. We'll take it under advisement. Thank you.